# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| BROCK SHANK, individually and on behalf of a class of all persons and entities similarly situated,<br><br>  Plaintiff,<br><br>vs.<br><br>GIVESURANCE INSURANCE SERVICES, INC.,<br><br>  Defendant. | Case No. 3:19-cv-136<br><br>CLASS ACTION COMPLAINT |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Brock Shank ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Defendant Givesurance Insurance Services, Inc. made an automated telemarketing call to the Plaintiff's cellular telephone without his prior express consent, which is prohibited by the TCPA.

3. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Brock Shank is an Ohio resident and a resident of this district.

6. Defendant Givesurance Insurance Services, Inc. ("Givesurance") is a California corporation with a principal place of business in Woodland Hills, California and a Registered Agent of Jennifer Rasiah, 22159 Cantlay Street, Canoga Park, California 91303. Defendant engages in telemarketing into this district, as it did with the Plaintiff.

## Jurisdiction & Venue

7. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

8. Givesurance regularly engages in business in this district, including making telemarketing calls into this district and soliciting business from this district for insurance services. Furthermore, Givesurance provides Ohio residents with insurance services through its brokerage in this district.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, as the telemarketing calls to the Plaintiff occurred in this district.

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing …

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

**The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones**

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." See 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  See 47 U.S.C. § 227(b)(3).

12. In enacting the TCPA, Congress expressly found that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[,] … consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers[,] … [e]vidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy[,] … [and that] [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13. In enacting the TCPA, Congress gave the Federal Communications Commission ("FCC") the power to prescribe regulations to implement the TCPA.

14. In 2013, the FCC prescribed a regulation requiring prior express written consent for all autodialed or prerecorded calls ("robocalls") that include or introduce an advertisement *or* that constitute telemarketing to wireless numbers. Specifically, it required:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
>
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. §§ 64.1200(a)(2) and (f)(8).

**The Growing Problem of Automated Calls**

15. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

16. By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

17. Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years:

- "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." FCC Chairman Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016) (https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls).

- "The FTC receives more complaints about unwanted calls than all other complaints combined."  Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2; FCC 16-57 (June 6, 2016) (https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf ).

- In 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016.  For every month in the fiscal year, robocalls made up the majority of consumer complaints about Do Not Call violations.  *FTC Releases FY 2017 National Do Not Call Registry Data* (Dec. 18, 2017) (https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc).

- In May 2018, the New York Times reported extensively on the surging number of robocall complaints filed by consumers with the FTC and overall widespread consumer outrage as to the prevalence of illegal telemarketing despite existing law.  *See* Tara Siegel Bernard*, Yes, It's Bad.  Robocalls, and Their Scams, Are Surging* (May 6, 2018) (https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html).

- In April 2019, YouMail, Inc., a provider of cloud-based telecommunication services, calculated that Americans suffered an all-time high of 5.23 billion robocalls in March 2019, setting a new monthly record.  This volume equaled 168.8 robocalls per day in March, and 1,953 robocalls per second.  Keya Balar, *5.23 Billion Robocalls Set Record in March, According to YouMail Robocall Index* (Apr. 4, 2019) (https://www.prnewswire.com/news-releases/5-23-billion-robocalls-set-record-in-march-according-to-youmail-robocall-index-300824631.html).

**Givesurance's Telemarketing**

18. Givesurance is a broker of insurance services that attempts to sell its client's services to the public.

19. Givesurance uses telemarketing to promote its products.

20. Givesurance's telemarketing efforts include the use of automated calls to solicit potential customers.

21. While such technology may save time and money for the Defendant's telemarketing efforts, it violates the privacy rights of the Plaintiff and putative class.

22. Recipients of these calls, including Plaintiff, did not consent to receive them.

### Call to the Plaintiff

23. Plaintiff Shank is a "person" as defined by 47 U.S.C. § 153(39).

24. Plaintiff's telephone number is (937) 694-XXXX, which is assigned to a cellular service.

25. Givesurance placed a telemarketing call to Plaintiff's number on March 26, 2019.

26. An automated text message then appeared on Plaintiff's cellular telephone:

Please contact our office to save you money on you [sic] Progressive Trucking InsurancePolicy. Kindly call Givesurance 888-887-0818 or email Jennifer.rasiah@givesurance.org.

27. The Caller ID for the text message was "555888."

28. "555888" is an SMS short code, which is used for text message broadcasting to send out advertisements *en masse*.

29. The short code "555888" is registered in the U.S. Short Code Directory to SimpleTexting, which also advertises that SMS short code on its website, https://simpletexting.com (last visited Apr. 24, 2019).

30. SimpleTexting offers "mass text messaging," which SimpleTexting describes as a "communication service that lets an organization or business send a single text message to thousands of subscribers at the same time." *Id.*

31. Defendant used SimpleTexting's "mass text messaging" service.

32. The foregoing facts, the impersonal content of the text messages, and the fact that these calls were part of a nationwide telemarketing campaign, demonstrate that the call was made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

33. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

## Class Action Statement

34. As authorized by Rule 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

35. The class of persons Plaintiff proposes to represent includes:

All persons within the United States to whom: (a) Defendant, and/or a third party acting on Defendant's behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using the telephone system(s) used in calling Plaintiff's cellular telephone number; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

36. Excluded from the class are the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of the judge's staff and immediate family.

37. The proposed class members are identifiable through phone records and phone number databases.

38. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

39. Plaintiff is a member of the proposed class.

40. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

  a. Whether Givesurance used an ATDS to make the calls at issue;

  b. Whether Givesurance placed telemarketing calls without obtaining the recipients' valid prior express written consent;

  c. Whether Givesurance's violations of the TCPA were negligent, willful, or knowing; and

  d. Whether the Plaintiff and the class members are entitled to statutory damages because of Givesurance's actions.

41. Plaintiff's claims are based on the same facts and legal theories as the claims of all class members and, therefore, are typical of the claims of class members, as the Plaintiff and class members all received telephone calls through the same automated telemarketing process.

42. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

43. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Givesurance and/or its agents.

44. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

45. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Violation of the TCPA's Automated Call provisions
### (On Behalf of Plaintiff and the Class)

46. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

47. The Defendant violated the TCPA by (a) initiating telephone calls using an automatic telephone dialing system to telephone numbers assigned to a cellular telephone service without the prior express consent of the called party. *See* 47 C.F.R. § 64.1200(a)(1).

48. The Defendant violated the TCPA by (a) initiating telephone calls that constitute telemarketing using an automatic telephone dialing system to telephone numbers assigned to a cellular telephone service without the prior express written consent of the called party. *See* 47 C.F.R. § 64.1200(a)(2).

49. In the alternative, Defendant violated the TCPA by the fact that it authorized and employed agents to make such calls on its behalf.

50. The Defendant's violations were willful and/or knowing.

51. Under the TCPA, the Plaintiff is entitled to injunctive relief. The Plaintiff seeks injunctive relief prohibiting Defendant from calling telephone numbers using an automatic telephone dialing system.

52. In addition, Plaintiff seeks damages of $500.00 for each such violation. *See* 47 U.S.C. § 227(b)(3).

53. Plaintiff requests the Court to exercise its discretion and treble such damages for each willful or knowing violation.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers using an automatic telephone dialing system, absent an emergency;

B. Certification of the proposed class;

C. Appointment of Plaintiff as representative of the class;

D. Appointment of the undersigned counsel as counsel for the class;

E. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

F. An award to Plaintiff and the class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the Complaint so triable.**

Dated: May 7, 2019

PLAINTIFF,
By his attorneys

**/s/ Brian K. Murphy**
Brian K. Murphy, Trial Attorney (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com

Anthony I. Paronich (pro hac vice to be filed)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com