IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BROCK SHANK, individually and
on behalf of all persons and
entities similarly situated,

      Plaintiff,

      v.

GIVESURANCE INSURANCE
SERVICES, INC., PROGRESSIVE
CASUALTY INSURANCE
COMPANY AND PROGRESSIVE
WEST INSURANCE COMPANY,

      Defendants

      and

GIVESURANCE INSURANCE
SERVICES, INC.,

      Third-Party Plaintiff

      v.

INFORMA MEDIA, INC.,

      Third-Party Defendant

CASE NO. 3:19-CV-136

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING REFILED MOTION FOR
JUDGMENT ON THE PLEADINGS FILED BY DEFENDANTS,
PROGRESSIVE CASUALTY INSURANCE COMPANY AND
PROGRESSIVE WEST INSURANCE COMPANY (DOC. #43) AND
THIRD-PARTY DEFENDANT INFORMA MEDIA, INC.'S REFILED
MOTION TO DISMISS THE THIRD-PARTY COMPLAINT (DOC. #44-1);
AND SUSTAINING PLAINTIFF'S MOTION TO LIFT STAY (DOC. #45)

---

Before the Court is a Motion for Judgment on the Pleadings filed by Defendants, Progressive Casualty Insurance Company and Progressive West Insurance Company (collectively "Progressive"). Doc. #43. Defendant and Third-Party Plaintiff, Givesurance Insurance Services, Inc. ("Givesurance"), has filed a Notice of Joinder in Progressive's motion. Doc. #50. The Court has considered Plaintiff's Notice of Opposition and Request to Lift Stay to conduct discovery, Doc. #45, and Plaintiff's Memorandum in Opposition, Doc. #47, as well as the reply filed by Progressive, Doc. #48, and Progressive's Supplemental Authority. Doc. ##49 and 52.[1]

Also, before this Court is a Notice filed by Third-Party Defendant Informa Media Inc. ("Informa"), Doc. #44, refiling its Motion to Dismiss Givesurance's Third-Party Complaint, Doc. #26. The Notice attaches the motion as an exhibit. Doc. #44-1.[2] In response, Givesurance filed a Notice, Doc. #50, incorporating its previously filed Memorandum in Opposition to Givesurance's motion, Doc. #31, and although Informa did not refile its reply, Doc. #33, the Court will consider the original such in ruling on this motion.

The motions are now ripe for decision.

---

[1] Doc. #51 is an identical filing without attaching Progressive's Supplemental Authority.

[2] Because the PageId numbers on Doc. #44-1 are illegible, the Court will cite to the original motion, Doc. #26.

## I.    The Amended Complaint

On February 11, 2020, Plaintiff, Brock Shank ("Plaintiff"), filed a putative

national class action Amended Complaint alleging that Givesurance, a California

corporation that brokers insurance services using telemarketing through

automated calls, and Progressive, two Ohio corporations that "had day-to-day

control over Givesurance," violated the Telephone Consumer Protection Act of

1991 ("TCPA"), 47 U.S.C. § 227.  Doc. #12, PageID##46, 50 and 53.  The proposed

class is alleged to include the following:

> All persons within the United States to whom: (a) Givesurance,
> and/or a third party acting on Givesurance's behalf, made one or
> more non-emergency telephone calls; (b) to their cellular telephone
> number; (c) using the telephone system(s) used in calling Plaintiff's
> cellular telephone number; and (d) at any time in the period that
> begins four years before the date of the filing of the original
> Complaint to trial.

*Id.*, PageID#54.

 In his Amended Complaint, Doc. #12, Plaintiff alleges that on March 26,

2019, Givesurance, as agent for Progressive, "placed a telemarketing call" to his

cellular telephone and "an automated text then appeared" on his phone asking

him to "'[P]lease contact our office to save you money on you[sic] Progressive

Trucking Insurance[ ]Policy.'"  *Id.*, PageID##50-54.  The text message, according to

Plaintiff, concluded by providing a telephone number and an email address

requesting that he either call or email Givesurance.  *Id.* at PageID#50. The Caller ID

showed the sender of the text message as an SMS short code of "555888" and the

Amended Complaint further alleged that this short code is registered to

3

"SimpleTexting" which, according to its website, offers "mass text messaging." *Id.*, PageID##50and 51. The Amended Complaint cites to the SimpleTexting website, "https://simpletexting.com," and states that it offers "mass text messaging" as a "'communication service that lets an organization or business send a single text message to thousands of subscribers at the same time.'" *Id.*, PageID#51.

Based on these allegations, the Amended Complaint alleges that "the call" to him was "made using an automatic telephone dialing system ('ATDS' or 'autodialer')[,] as that term is defined in 47 U.S.C. § 227(a)(1)." *Id.*, PageID#51. He further alleges that he had not provided Givesurance any prior express written consent to call him. *Id.*, PageID#56.

Plaintiff did not respond to Givesurance's text message, but alleges that if he had, the insurance broker would have tried to sell him a Progressive trucking insurance policy since it was the only trucking insurance policy Givesurance was authorized to sell. *Id.*, PageID#51. He further alleges that he and others "were harmed by these calls" since they were "temporarily deprived" of the "legitimate use of their phones" during the telemarketing calls. *Id.* The Amended Complaint alleges that Plaintiff and the other recipients of the calls had "their privacy" invaded, that the calls were "frustrating, obnoxious, annoying" and a "nuisance" that disturbed "the solitude of Plaintiff and of the class." *Id.*

On February 25, 2020, Givesurance filed a Third-Party Complaint against Informa for fraud and negligent misrepresentation. Doc. #16. This pleading

alleged that in February 2019, while researching options for contacting potential trucking insurance customers, Informa "induced" it to send bulk messages through "FleetSeek, which had a list of telephone numbers belonging to members of the trucking industry who had opted in to receive text messages and other communications related to the trucking industry." *Id.*, PageID#84. Givesurance alleged in its Third-Party Complaint that Informa represented it "could partner with FleetSeek/Informa" and use their data on a mass text messaging platform "to contact the owners of the 'opted in' telephone numbers to offer them products and services." *Id.* As alleged in the pleading, Givesurance agreed to use Informa's services, obtained their "opted in" telephone numbers and separately contracted with SimpleTexting, "a text marketing platform," to contact those numbers "whose owners had expressly consented to receive the messages." *Id.*

Shortly after the filing of the Amended Complaint and Third-Party Complaint, Progressive filed their Motion for Judgment on the Pleadings, or, in the Alternative, Motion to Stay, Doc. #25, and Informa filed a Motion to Dismiss the Third-Party Complaint. Doc. #26. Responses and replies were filed by the parties and on July 14, 2020, Progressive filed an Amended Motion to Stay citing the Supreme Court's recent decision granting certiorari in *Facebook, Inc. v. Duguid*, 591 U.S. __, 2020 WL 3865252, *1 (2020). Doc. #35. It asserted a decision by the Supreme Court would be helpful in resolving the issues before this Court, since certiorari was granted to determine "whether an autodialer," an ATDS, "must have the capacity to generate random or sequential phone numbers." 591

5

U. S. ——, 141 S.Ct. 193, 207 L.Ed.2d 1118 (2020). Plaintiff did not oppose the motion.[3] Doc. #37. Progressive's Amended Motion to Stay was sustained pending the Supreme Court's decision in *Duguid*. Doc. #40. On March 31, 2021, the Court overruled without prejudice to refiling Progressive's Motion for Judgment on the Pleadings, Doc. #25, and Third-Party Defendant's Motion to Dismiss the Third-Party Complaint, Doc. #26, once the pending Supreme Court decision was issued.

On April 1, 2021, the Supreme Court's decision in *Facebook, Inc. v. Duguid*, —— U.S. ——, 141 S. Ct. 1163, 1171, 209 L.Ed.2d 272 (2021), was announced. Thereafter, Progressive refiled its Motion for Judgment on the Pleadings, Doc. #43, and Informa refiled its Motion to Dismiss the Third-Party Complaint. Doc. #44. In response, Givesurance filed a Notice that it was joining in Progressive's motion and reply and incorporating by reference its previously filed Memorandum in Opposition to Informa's Motion to Dismiss, Doc. #31. Doc. #50.

The Court will first address Progressive's Motion for Judgment on the Pleadings, Doc. #43, followed by Informa's Motion to Dismiss the Third-Party Complaint. Doc. #44.

---

[3] Plaintiff states that he would not be prejudiced by the stay "because he has already secured the detailed calling records reflecting more than 50,000 unsolicited telemarketing texts that were delivered on behalf of Defendants to the putative class utilizing an automatic telephone dialing system ('ATDS')."

## II. Defendants' Motion for Judgment on the Pleadings (Doc. #43)

### A. Standard of Review

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A "legal conclusion couched as a factual allegation" need not be

accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Barany–Snyder v. Weiner,* 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### B. Analysis

Defendants[4] first argue that Plaintiff's claim under the TCPA fails as a matter of law pursuant to the Supreme Court's decision in *Duguid*, since the call made to him did not come from an ATDS. They next assert that Plaintiff lacks Article III standing, since his receipt of a single text does not constitute an injury-in-fact. Although Defendants did not file a motion pursuant to Fed. R. 12(b)(1) arguing lack of subject matter jurisdiction, if the Court finds that Plaintiff has no Article III standing, then the Court lacks jurisdiction to adjudicate this claim. Accordingly, the Court will first address Defendants' Article III standing argument.

---

[4] Because Givesurance has joined in Progressive's Motion for Judgment on the Pleadings and Reply, Doc. #50, the Court will refer to Progressive's motion as being filed by "Defendants."

### 1. Article III Standing

To establish standing, the Supreme Court has held that the plaintiff must establish an injury in fact, traceable to the challenged conduct of the defendant, and a favorable judgment must be likely to redress that injury. *Spokeo v. Robins*, 578 U.S. 330, 338 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). An injury in fact exists if a plaintiff shows "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339. (quoting, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351). A concrete injury is not "necessarily synonymous with 'tangible'" and "intangible injuries can nevertheless be concrete. "*Id*. at 340. A "bare procedural violation" does not qualify, even if it gives rise to a statutory cause of action. *Id*. at 342.

Where the injury asserted is an intangible interest, as is the case here, courts are required to examine both the history of the injury and Congressional judgment to determine whether Article III standing is satisfied. *Spokeo*, 578 U.S. at 340-342; *Buckholz v. Tanick*, 946 F.3d 855 6tjh Cir. 2020 (dismissal of Fair Debt Collection Act claim for lack of Article III standing affirmed where plaintiff failed to show he suffered a harm Congress intended to prevent or that his injury is analogous to a harm that the common law recognizes). In the case of the TCPA, the common law recognizes claims based on privacy and nuisance and the "solitude of another by committing the 'tort of intrusion upon seclusion,'" *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.)

9

(citation omitted), and Congress, in passing the TCPA, determined that

"[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy" and a

"nuisance." Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394 (1991).

Because the Sixth Circuit has not addressed standing under the TCPA,

Defendants rely on an Eleventh Circuit decision, *Salcedo v. Hanna*, 936 F.3d 1162

(11th Cir. 2019). In *Salcedo*, the plaintiff alleged a violation of the TCPA based on

the receipt of a single unsolicited text message. He further alleged that this

message caused him "to waste his time answering or otherwise addressing the

message" and "[w]hile doing so" he "and his cellular phone were unavailable for

otherwise legitimate pursuits." *Id.* at 1167. This text message "'resulted in an

invasion'" of both "'his privacy and right to enjoy the full utility of his cellular

device.'" *Id.* The appellate court held that under the TCPA, receipt of a single

unsolicited text message did not create a concrete harm and the plaintiff lacked

standing to bring a putative class action. The Court reasoned that "[T]he chirp,

buzz, or blink of a cell phone receiving a single text message is more akin to

walking down a busy sidewalk and having a flyer briefly waived in one's face.

Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal

courts." *Id.* at 1172.

Unlike the Eleventh Circuit, the Second, Fifth, Seventh and Ninth Circuits

have held that Article III standing is satisfied under the TCPA when one or more

unconsented text messages are sent. *See Melito v. Experian Mktg. Sols., Inc.*, 923

F.3d 85, 93 (2d Cir. 2019)(receipt of unsolicited text messages, without any other

injury, is sufficient to demonstrate injury-in-fact under the TCPA); *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021), (single text message is injury in fact under the TCPA); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020) (Barrett, J.)( a "few unwanted automated text messages" from an ATDS without consent of the recipient violated the TCPA and articulated "a concrete harm that Congress has chosen to make legally cognizable"), cert. denied, 141 S. Ct. 2552 (2021)); and *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (under the TCPA, two text messages were a "concrete injury in fact sufficient to confer Article III standing").  Although only the Fifth Circuit in *Cranor* dealt with a single unsolicited text message, as noted by the Seventh Circuit in *Gadelhak*, "[W]hen *Spokeo* instructs us to analogize to harms recognized by the common law, we are meant to look for a "close relationship in kind, not degree." *Gadelhak*, 950 F.3d at 473.  Although a single unsolicited text message "may be too minor an annoyance to be actionable at common law," it poses "the same kind of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable." *Id*.

Accordingly, because the Court finds the Amended Complaint alleged Plaintiff received and was harmed by the unsolicited text, an injury in fact under the TCPA exists.  Defendants' Motion for Judgment on the Pleadings on the issue of Article III standing is overruled.

## 2. Pleading an ATDS

The TCPA "proscribes abusive telemarketing practices by, among other things, imposing restrictions on making calls with an 'automatic telephone dialing system.'" *Duguid*, 141 S. Ct. at 1167.  As stated by the Court, unless there is the express consent of a telephone call recipient, no person can "make any call. . . using any automatic telephone dialing system. . . to any telephone number assigned to a paging service [or] cellular telephone service." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016).  For purposes of the TCPA, a text message to a cellular telephone is a "call." *Id.*; *See Duguid*, 141 S. Ct. at 1168 n. 2 (text message assumed to qualify as a call "without considering or resolving the issue"). The statute provides a private right with recovery for "the 'actual monetary loss' or $500 for each violation, 'whichever is greater,' with treble damages permitted 'if the defendant willfully or knowingly violated' the Act." *Campbell-Ewald Co.*, 577 U.S. at 156.

The issue before this Court is whether Plaintiff' has pled "'sufficient factual matter'" that an ATDS was used to send the text message to him making his claim under the TCPA "plausible" and "more than merely possible." *Fritz*, 592 F.3d at 722.

An ATDS is defined as "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).  As explained by the Supreme Court in *Duguid*, such a system has the capacity either to store a

telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator. *Duguid*, 141 S. Crt. at 1168 – 1173.  In *Duguid*, the Supreme Court held that Facebook, which notified users of attempts to access their accounts from unknown devices or browsers by texting them, was not using an "automatic telephone dialing system" within the meaning of the TCPA, since the notification system used by them neither stored nor produced numbers using a random or sequential number generator. *Id.*, at 1170.  Instead, Facebook used equipment that called numbers from a targeted list of subscribers or contacts. *Duguid*, 141 S.Ct. 1163, 1167 (2021).

Here, Defendants argue the Amended Complaint alleges that "Givesurance used a communication service that allowed it to reach 'thousands of <u>subscribers</u> at the same time.'" (emphasis added) Doc. #12, PageID#51.  They also cite to the statement from the SimpleTexting website, *Id.*, PageID 51, that users must "import any existing contacts." Doc. #24-1, PageID#118.[5]  Accordingly, Defendants argue no claim under the TCPA is alleged since a system that uses "subscribers" or requires users to "import any existing contacts" is not an ATDS, since it did not "store or produce telephone numbers to be called, using a random or sequential number generator."

In response, Plaintiff argues that the Amended Complaint alleges facts sufficient to establish an ATDS.  Specifically, he asserts that the following factual

---

[5] Because the Amended Complaint cites to the SimpleTexting website, providing both its address and statements from its webpage, the Court can consider additional statements from its webpage. *Amini*, 259 F.3d at 502.

allegations in the Amended Complaint give rise to a reasonable inference that an ATDS was used: (1) "[T]he call to Plaintiff was made from SMS Code 555888;" (2) an SMS code is evidence of the use of an ATDS, since they are "used to send out advertisements *en masse*;" (3) SimpleTexting advertises its ability to do "mass text messaging;" (4) the text message was "non-personalized," generic and part of a "nationwide telemarketing campaign;" and (5) Plaintiff did not consent to receiving the text. Doc. #47, PageID#594, citing Doc. #12, PageID##50-51. Based on these facts, the Amended Complaint alleges "that the call was made using an automatic telephone dialing system. . . as that term is defined in 47 U.S.C. § 227(a)(1)." Doc. #12, PageID#51.

The Court finds that the above-cited allegations allege a plausible claim under the TCPA. Unlike *Duguid*, Plaintiff does not allege that his name was prepopulated or dialed from a legitimate list of customer or client contacts and not through a random or sequential number generator. If discovery shows that no ATDS device, as defined by *Duguid*, was used at the time of the alleged violation, and Plaintiff and the individuals who received the Givesurance text message were all "subscribers" or imported contacts as Defendants assert, then a motion for summary judgment may be filed at that time.

Accordingly, Defendants' Motion for Judgment on the Pleadings, alleging that no claim under the TCPA exists because Plaintiff has not pled that an ATDS was used, is overruled.

### III. Informa's Motion to Dismiss the Third-Party Complaint (Doc. #44)

#### A. Factual and Procedural Background

Givesurance, a California corporation, alleges that in February 2019, it was "researching options for contacting, on a one-to-one basis, potential customers in need of trucking insurance." Doc. #16, PageID#83. It alleges it responded to a solicitation from Preston Altman ("Altman"), a representative of Informa, a Delaware corporation. *Id.* As alleged in the Third-Party Complaint, Givesurance was "induced" by him "to receive and utilize the services of 'FleetSeek' for purposes of sending bulk messages" to potential customers. *Id.* The pleading further alleges Altman told Givesurance "that FleetSeek had a list of telephone numbers belonging to members of the trucking industry, such as Plaintiff, who had expressly 'opted in' to receive text and other communications related to products and services of interest to those in the trucking industry." *Id.* Informa's representative allegedly told Givesurance that it "could partner with FleetSeek/Informa, obtain the data that it owned and then use a mass text messaging platform to contact the owners of the 'opted in' telephone numbers to offer them" its products and services. *Id.*, PageID#84. The Third-Party Complaint alleges Altman knew that Givesurance would rely on these representations and further alleges it did so "to its detriment." *Id.* Thereafter, it alleges it "agreed to receive and utilize the services offered by Informa" which included obtaining from them "the list of 'opted in' telephone numbers whose owners had expressly agreed to receive communications from vendors." *Id.* After receiving this

information from Informa, Givesurance alleges it then contracted "with a text marketing platform called SimpleTexting to contact those phone numbers whose owners had expressly consented to receive the messages." *Id.*

The Third-Party Complaint alleges that Shank, on behalf of himself and others similarly situated, has sued Givesurance and Progressive under the TCPA "as a result of a single text massage" that was allegedly sent to him, "by or on behalf of" Givesurance, concerning his "existing trucking insurance policy with Progressive Insurance." *Id.* Shank has alleged that the text he received was sent by "an Automatic Telephone Dialing System and without prior express consent" from him. *Id.* Givesurance alleges, upon information and belief, that Shank's telephone number and the numbers from those in the purported class were "received from Informa/Fleetseek" and represented by Informa to be individuals who had "'opted in'" and "consented" to receive such messages. *Id.*, PageID#84. Although it denies liability for Shanks's claims, it alleges a right to indemnification for any loss or damage that may result from them. *Id.*, PageID#85.

Givesurance seeks damages against Informa for fraud and, in the alternative, for negligent misrepresentation. *Id.*, PageID#86. It demands judgment in excess of $75,000.00, interest, attorney fees and "additional economic and non-economic damages." *Id.*, PageID#86.

Informa has filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or,

in the alternative, pursuant to Fed. R. Civ. P. 12(c).[6] Doc. #26, PageID#143. It

argues that dismissal is required for the following reasons: (1) the fraud and

negligent misrepresentation claims fail to satisfy the "heightened pleading

standards" of Fed. R. Civ. P. 9(b) and do not state a claim for relief; (2) FleetSeek's

Terms of Service ("Terms of Service") bar the tort claims of fraud and negligent

misrepresentation under the economic loss doctrine;[7] and (3) this Court lacks

subject matter jurisdiction pursuant to 28 U.S.C. § 1332, since the Terms of

Service limit Informa's liability to $1,000.00. Informa has attached four exhibits in

support of its motion: the invoice from FleetSeek to Givesurance, Doc. #26-1,

PageID#161; two sets of emails between Givesurance and Informa dated May

2019, Doc. #26-2, PageID##162-171, and Doc. #26-3, PageID##172-184; and the

Terms of Service. Doc. #26-4, PageID##185-195. Informa has also filed a reply

which includes as exhibits a declaration from an attorney who responded to a

subpoena issued by Givesurance to FleetSeek and an email attached to the

declaration that is alleged to be "a true and correct copy of the February 12,

---

[6] A motion to dismiss and a motion for judgment on the pleadings are analyzed under the same standard. *Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010).

[7] Ohio's economic-loss doctrine bars recovery in tort for "losses suffered as a result of a breach of duties assumed only by agreement[,]" *Corporex Dev. & Constr. Mgmt, Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 2005-Ohio-5409, 835 N.E.2d 701 (quoting *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 54 Ohio St. 3d 1, 7, 560 N.E.2d 206 (1990)).

2019[,] demo request" of a Givesurance representative "initiated through the FleetSeek website." Doc. #33-1.

## B. Standard of Review

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id*. at 679.

In ruling on a motion to dismiss, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### C. Analysis

#### 1. Informa's Exhibits and Declaration

Before addressing the legal arguments in Informa's motion, the Court must first determine whether it can consider the exhibits attached to the motion, Doc. #26, and reply. Doc. #33.

In general, matters outside of the pleadings are not considered in ruling on a motion to dismiss or motion for judgment on the pleadings. If matters outside of the pleadings are submitted and are not excluded by the court, the motion must be treated as one for summary judgment, and all parties must be given a reasonable opportunity to respond and present materials pertinent to the motion. Fed. R. Civ. P. 12(d). There are, however, exceptions to this rule. These exceptions include documents attached to the pleadings under Fed. R. Civ. P. 10(c),[8] *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) and "exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Although a plaintiff is not required to attach to its complaint documents upon which a claim is based, a defendant may introduce pertinent documents if the plaintiff fails to do so. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.*

Here, Informa asserts the invoice, emails and Terms of Service should be considered in ruling on its motion. It argues that the invoice and emails show that Givesurance's claim is for breach of contract and that it has no fraud or negligent

---

[8] Rule 10(c) states that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

misrepresentation claim under the economic loss doctrine. It further contends

that based on the exhibits attached to its reply, Givesurance, on February 12,

2020, accessed the FleetSeek platform, generated a web request for a

demonstration and accepted its Terms of Use. The Terms of Use, among other

things, disclaim all contractual warranties, state that no liability exists for

negligence and limit damages to $1,000.00. Doc. #26, PageID##150-152.

 The invoice, emails, Terms of Service and Declaration, however, are not

"matters of public record, orders, items appearing in the record of the case, and

exhibits attached to the complaint." *Amini*, 259 F.3d at 502 (quoting *Nieman v.*

*NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997).[9] Additionally, the Third-Party

Complaint alleged claims of fraud and negligent misrepresentation against

Informa, referenced no negotiations, agreements or contracts with Informa and

did not cite or reference FleetSeek's website. Simply stated, it had no "pertinent

documents" to attach to its Third-Party Complaint that are dispositive of its fraud

and negligent misrepresentation claims.

---

[9] Although the declaration and exhibit attached to the reply are submitted to refute Givesurance's assertion in its memorandum in opposition that it did not have "constructive knowledge, or even. . . access or the ability to review the provisions contained in the Terms of Service," Doc. #31, PageID#238, it is excluded since Informa has filed pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c) and matters outside the complaint, with certain limited exceptions discussed above, may not be considered by the district court. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009) (citing *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir.2008)).

Accordingly, these exhibits, Doc. ##26-1, 26-2, 26-3, 26-4 and 33-1, are excluded from the Court's consideration in ruling on the Motion to Dismiss.

Because the above referenced exhibits have been excluded from consideration, the Court will address Informa's remaining argument for dismissal of the Third-Party Complaint, i.e., whether Givesurance has pled fraud and negligent misrepresentation claims sufficiently to satisfy the "heightened pleading standards" of Fed. R. Civ. P. 9(b) and has stated claims for relief that survive a motion to dismiss.

### 3. Fraud and Negligent Misrepresentation

Count One of the Third-Party Complaint alleges fraud in the inducement and Count Two pleads, in the alternative, negligent misrepresentation.  Fed. R. 9(b) states that a claim for fraud must be stated with "particularity." The purpose of this rule is to (1) alert parties to the particulars of the allegations against them so they can intelligently respond; (2) prevent "fishing expeditions;" (3) protect reputations against fraud allegations; and (4) whittle down potentially wide-ranging discovery to only relevant matters. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466–67 (6th Cir. 2011). However, "[R]ule 9(b)'s additional pleading requirements "should not be read to defeat the general policy of 'simplicity and flexibility' in pleadings contemplated by the Federal Rules." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008) (quoting *Michaels Bldg Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 678 (6th Cir. 1988)).

A claim for fraudulent inducement, or fraud, requires the following:

(1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance.

*Micrel, inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007) (citing *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167 (1984)). A plaintiff must prove all elements to recover on its claim. *Graham v. American Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003).

To allege a claim for negligent misrepresentation, there must be proof showing that "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 534 N.E.2d 835, 838 (1989) (citing Restatement (Second) of Torts § 552(1) (1965)). A claim for negligent misrepresentation requires an affirmative false statement and not an omission. See *Leal v. Holtvogt*, 123 Ohio App.3d 51, 702 N.E.2d 1246, 1261 (1998); *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E.2d 1261, 1269 (1996).

Informa asserts that both the fraud and negligent misrepresentation claims are "eviscerated," based on the statements in the emails from "Givesurance's

own principal," which the Court has excluded, and because "no false statement was ever made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false to infer such knowledge." Doc. #26, PageID#153. Givesurance alleges, however, that in February 2019, Informa, through Altman, solicited and induced Givesurance to receive and utilize the services of FleetSeek to send bulk messages. At that time, he represented to Givesurance that it would be given a list of telephone numbers of "members of the trucking industry" who had "opted-in" to receive text and other communications concerning products and services related to the "trucking industry" and that it could partner with "FleetSeek/Informa" to obtain their data and use a mass text messaging platform to contact the "opted-in" individuals to offer them the products and services. Givesurance then alleged that it has been sued by Shank under the Telephone Consumer Protection Act of 1991 ("TCPA") for the receipt of a text message through the use of an Automatic Telephone Dialing System without his prior express consent.

Based on these allegations, Givesurance has pled sufficient detail to allow Informa to prepare a responsive pleading. *MyVitaNet.com v. Kowalski*, No. 2:08cv48, 2008 WL 2977889, at *5, (S.D. Ohio July 29, 2008) (citing *United States v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)). Moreover, "[A] "A fraudulent inducement claim often involves a misrepresentation of facts outside the contract or other wrongful conduct inducing a party to enter into a contract." *Res. Title Agency, Inc. v. Morreale Real Estate Serv. Inc.*, 314 F.Supp.2d 763, 774 (N.D. Ohio

2004) (quoting *Meeker v. Shafranek*, 112 Ohio App. 320, 323, 176 N.E.2d 293 (Ohio Ct.App.1960)).

Givesurance has also pled the necessary legal elements of fraud and negligent misrepresentation in its Third-Party Complaint. Both counts incorporate the previously alleged factual allegations and, with respect to the alternative claim of negligent misrepresentation, Givesurance pleads an affirmative representation and not an omission. Accordingly, Informa's Motion to Dismiss, is overruled.

## IV. Conclusion

For the reasons set forth above, Defendants' Refiled Motion to Dismiss, Doc. #43, and Informa's Motion to Dismiss, Doc. #44-1 and Doc. #26, are OVERRULED. Plaintiff's Motion to Lift Stay, Doc. #45, is SUSTAINED.

Date: February 23, 2022

WALTER H. RICE